# United States District Court
## for the
## District of Massachusetts

Jeremy Southgate, *pro se*,   )
                              )
Plaintiff,                    )
                              )
v.                            )   Civil Action No.
                              )
Ana Villanueva,               )
Christopher Nolte,            )
Lyor Cohen,                   )
SoundSpark Inc.,              )
Theory Entertainment LLC,     )
Warner Bros. Entertainment Inc., )
Warner Music Group Corp.,     )
                              )
Defendants.                   )

    1.    Jeremy Southgate is a citizen of Massachusetts.

    2.    Ana Villanueva is a student of the Massachusetts Institute of Technology residing in Massachusetts; Christopher Nolte is a student of the Massachusetts Institute of Technology residing in Massachusetts; Lyor Cohen is a citizen of New York; SoundSpark Inc. is a Delaware corporation and a foreign corporation registered in Massachusetts; Theory Entertainment LLC is a Delaware limited liability company; Warner Bros. Entertainment Inc. is a Delaware corporation; Warner Music Group Corp. is a Delaware corporation.

    3.    Jurisdiction and venue are proper pursuant to Chapter 15 U.S.C. §1121.

COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT

    4.    My name is Jeremy Southgate, and I hereby affirm, under penalty of perjury, that the following is true to the best of my own knowledge and belief.

    5.    I am the owner of United States Trademark Registration No. 4,606,004 for **SOUND SPARK STUDIOS**® (and design)[1], and I am both founder and president of Sound Spark Studios, doing business as a Massachusetts sole proprietorship and as a solely owned Delaware limited liability company.

---

[1] EXHIBIT A

6. I believe that the defendants have committed to and are thereby engaging in *egregious* activities that constitute federal trademark infringement and unfair competitive practices.

## DEGREE OF PLAINTIFF'S INVESTMENT IN THE BRAND

7. I am a musician who is trying to start a new music and entertainment company on a strong foundation.

8. After voluntarily leaving school at age 20 and spending some lonely months (February-August 2011) producing over 22 hours of documented original music concepts, without internet and television and other activities common for pleasure, I have worked faithfully and diligently to make my own living and to pursue a better future.

9. I was entry-level employed at a Starbucks for approximately two years (November 28, 2011-December 16, 2013), during which time, in the first year, I earned approximately $14,500 and, in the second year, $17,000, where I also worked a second job (working a total of six days per week) as a door-to-door fundraiser for WBGH for two cold months (January-February 2013)[2].

10. As I developed my intellect, teaching myself music production techniques, computer programming languages, and business law, and I developed my music, with practically all music production done on my own, I concurrently conducted heavy research in order to find a unique name in order to distinguish my music ("goods", trademark class 009)[3].

11. As early as November 22, 2011, I had designed concepts for a distinct name (word mark) and logo (design mark) that became the "Sound Spark Studios" mark[4].

12. On June 28, 2012, I filed an application for a federal trademark registration, and that application has since matured into U.S. Trademark Registration No. 4,606,004.

13. As of October 2014, I, Jeremy Southgate, have invested a diligently estimated $47,955 and three years of dedication into forming and developing Sound Spark Studios. I believe, therefore, that it is *proper* for the *law* to *define* this novel intellectual concept, my trademark, and its evident applications, which I authored, as my inalienable *property*.

---

[2] EXHIBIT B

[3] EXHIBIT C

[4] EXHIBIT D

14. I have invested my life and liberty to create this Good.

## THEORY FOR FINDING PATTERN OF INFRINGEMENT

15. It is possible and seems likely that Lyor Cohen was aware of my trademark while in his capacity as CEO of Warner Music Group ("WMG"), or as a result of this capacity and WMG's capacity for research and awareness of new trademark applications relating to entertainment.

16. I believe that Lyor Cohen's *abrupt* departure as CEO of WMG, announced September 24, 2012[5], three months after I filed my trademark application, while the music industry was struggling, while maintaining to have full access to WMG's resources, is a very suspicious and unusual arrangement.

17. Once aware of *the mark*, I believe Lyor Cohen became aware of *my claim to ownership of the mark*; wherefore, Lyor Cohen seems to have presented bad faith to me via (a) the subtlety of an evidently subversive scheme by his other associates and agents (Theory Entertainment LLC, Warner Bros. Entertainment Inc., Warner Music Group Corp.) and (b) via the approach of two MIT graduate students (Ana Villanueva, Christopher Nolte), due to his guiding influence, as he has infringed upon my intellectual property rights.

18. There appears to be no evidence supporting a claim that the MIT students had conducted due diligence surrounding what they reasonably believed was an original and valuable idea, because they were not aware of my name conflict, most obviously, nor were they fully aware of their would-be competitors for such an idea (e.g. Earbits, Spotify, Pandora, Kickstarter, and Indiegogo).

## FURTHER HISTORY OF ACTIONS AND INTERACTIONS

19. Having left WMG in the last quarter of 2012, throughout the Year 2013, Lyor Cohen and associates were connected with the registration of the entity Theory Entertainment LLC in Delaware, which masks the identity of 300 Entertainment while doing business as for 300 Entertainment, and federal trademark applications for a word mark and then an abstract design mark.[6]

20. The timed staggering of two by five trademark applications, I believe, is premeditated, because I do not believe that Lyor Cohen and associates would form a company with only a word mark, filed April 24, 2013, and moreover because the words only "300 Entertainment" might not trigger a

---

[5] EXHIBIT E

[6] EXHIBIT F

likelihood of confusion with U.S. Trademark Registration No. 4,606,004, which was pending at that time.

21. Now, however, with their suspicious and particular choice of abstract mark, filed September 30, 2013, although I have timely initiated opposition proceedings for the design mark, the window of time has passed to oppose the word mark with a standard opposition proceeding.

22. Pete Giberga, now an associate of 300 Entertainment, had an opportunity to know of my inherently distinctive trademark as early as June 28, 2013, because I sent him an email[7], asking for his help and collaboration as an entertainment manager, in connection with the mark. He did not respond or acknowledge.

23. Prior to the formation of 300 Entertainment, I believe Pete Giberga must certainly have contributed to Lyor Cohen's awareness of my mark and its distinctiveness.

24. The web domain name "threehundred.biz" was registered on October 21, 2013, with a website and social media pages launched therewith, and it appears to indicate first use of the mark(s), most notably the mark consisting of triangle that, I believe, was intentionally made to be an abstract shape, so as to be a subtle but colorable imitation of the arrangement of the words "SOUND", "SPARK", and "STUDIOS" in U.S. Trademark Registration No. 4,606,004[8].

25. Around the time of October 23, 2013, it was announced publicly that Google had made an investment[9] of $5 million in 300 Entertainment. What's the big idea? (A byte's already been taken out of the Apple, and by any other name, it would not be as sweet).

26. On November 21, 2013, Lyor Cohen visited[10] the Massachusetts Institute of Technology ("MIT"), and I believe he may have been looking for young students specifically for the purpose of approaching me via their agency.

27. It may be true that two students, Ana Villanueva and Christopher Nolte, recognized his fame and approached Lyor Cohen with a good-faith idea for a 'Kickstarter or Indiegogo for music'; however, there appears to be no evidence for the origin of the students' use of SOUNDSPARK, and I believe Lyor Cohen may have provided the name to them in order to target a weakness in

---

[7] EXHIBIT G

[8] EXHIBIT H

[9] EXHIBIT I



Complaint

U.S. Trademark Registration No. 4,606,004; "SOUND" and "STUDIOS" are disclaimed from exclusive right; therefore, Lyor Cohen appears to have encouraged their infringement with the intent of diluting "SPARK".

28. The web domain name "SoundSpark.me" was registered[11] by Christopher Nolte on January 17, 2014. I had no means of being immediately aware of it.

29. On April 16, 2014, in anticipation of further developing my brand and company, I mailed my Articles of Organization for Sound Spark Studios LLC to the Delaware Division of Corporations.

30. On May 9, 2014, I noticed that Sound Spark Studios LLC had been accepted with the Delaware Secretary of State, and the entity was deemed filed[12] with the State as of April 21, 2014.

31. On May 14, 2014, the school project startup run by Ana Villanueva and Christopher Nolte and titled "SoundSpark" "won" $10,000, an instantly gratifying prize and publicity[13] gift from MIT. I had no means of being immediately aware of it.

32. Beginning on August 6, 2014, I noticed, on a visitor log[14], many page visits (counted 79 as of October 2, 2014) to my website "soundsparkstudios.com" from IP Addresses that, when I searched a "whois" database, identified "Warner Bros. Entertainment Inc." as the domain registrant. Hence, I believe, I can deduce that Warner Bros. has made full use of my website, visited every page including the legal terms and conditions, and they have had reasonable notice of my intellectual property claims.

33. On August 7, 2014, I received my first email[15] contact from and awareness of Ana Villanueva asking to "talk about the trademark" on a phone call. I believe, the defendants were trying to set me up so that they could claim inferences from our conversation that I would be unable to contradict with evidence since phone calls take place 'off the record'.

34. On August 8, 2014, I filed a service mark application, having serial number 86360938, for the same mark in relation to services. I was thereby

---

11 EXHIBIT K

12 EXHIBIT L

13 EXHIBIT M

14 EXHIBIT N

15 EXHIBIT O

following my natural progress and bona fide intent, since 2011, to build on this brand.

35. I responded via email to Ana Villanueva's email[16] of August 7, 2014, with a bona fide intention to treat but also to bar any inferences from a phone conversation, and when she agreed, I joined a phone conference of approximately 15 to 20 minutes with Ana Villanueva and Christopher Nolte on August 11, 2014.

36. On our phone call, Ana Villanueva and Christopher Nolte did not mention Lyor Cohen or 300 Entertainment by name. They simply said, they had met and been mentored by a music industry executive and had founded a music company startup, and they had been invited to New York to pitch their idea to an office. They said, they would be working on this startup for the summer, then returning to school to graduate before working the startup full-time. They wanted to know if I was working alone or if I had others working for me. They did not offer any sum certain for my trademark, although they expressed a want for it. When I indicated that I intended to reserve all rights for use of my mark and mentioned my plan for a derivative SPARK IT, they said they would call me back when they had decided whether or not simply to find another name (i.e. mark) for their startup.

37. On our phone call, I did not know what to expect. I had beforehand conducted due diligence and discovered that these students had the 'mentorship' of Lyor Cohen, whom I had never heard of before, who had some connection with WMG a.k.a. Warner Bros., and that these students had already styled themselves as the "founders" of "SoundSpark" (SOUNDSPARK)[17]. They seemed haughty and high because of their connections to "influence." They seemed uninterested in joining my talents and skills with theirs, nor in making any bona fide offer of compensation for my trademark, which they simply wanted to possess. I mentioned that I was looking for investors and would appreciate their help. I indicated that I wanted my mark reserved for my own ideas, and that, if they thought their idea had promise, they ought to distinguish it with a different name and mark. This, I believe, I said professionally and respectfully, though assertively and defensively.

38. On the same evening as our 20-minute phone call, Christopher Nolte called me back to say briefly that they would find another name. I sent a follow-up email[18] to Ana Villanueva and Christopher Nolte in order to document this fact, and also because I was curious and interested in reaching out to them. There was no timely reply or acknowledgement.

---

[16] EXHIBIT P

[17] EXHIBIT Q

[18] EXHIBIT R

39. On August 15, 2014, I first became aware that "SoundSpark Inc." was filed[19] with the Secretary of State of Delaware, as I was searching for my own entity "Sound Spark Studios LLC." I believe it is suspicious that Lyor Cohen, despite being a close advisor, appears not a director of the Delaware entity "SoundSpark Inc.", and I assume it is for reason of veiling liability or possibly even to 'confer' liability onto the MIT students.

40. I might have assumed that the defendants had formed a corporation before they were aware of me and that, subsequent to knowing me, articles already *en route* or received were filed with the Delaware Secretary of State. However, I now believe, in light of the evidence, that this filing was made with knowing bad faith.

41. On August 17, 2014, I sent an email[20] to "info@threehundred.biz", via a website contact form, to notify Lyor Cohen of my claim to trademark rights and to attempt negotiation. I received no reply or acknowledgement for this message.

42. On August 19, 2014, the newly formed entity SoundSpark Inc. filed a federal trademark application for "SPARKIT" with no mentioning of music or entertainment, though clearly related to the same, and SPARKIT replaced all public instances of SOUNDSPARK on webpages controlled by Ana Villanueva and Christopher Nolte[21]. However, I note and have become increasingly aware that they have continued to use a stylized design consisting of two "S" letters, which seems deliberately intended to continue the consumer's association of the defendants and SOUNDSPARK.

43. Concurrently, on August 19, 2014, I received an email from Christopher Nolte, and I believe that this was an emotional reaction of hubris on his part, resulting from my direct communication attempt with Lyor Cohen on August 17, 2014. Nevertheless, I addressed him and proceeded to demand that the defendants cease and desist infringing activities on August 20, 2014[22].

44. I received no acknowledgement for my message and demand to cease and desist, sent on August 20, 2014.

---

[19] EXHIBIT S

[20] EXHIBIT T

[21] EXHIBIT U

[22] EXHIBIT V

45. I received no acknowledgement for my final message to the defendants on August 22, 2014, an attempt to establish good faith amicable relations[23].

46. On August 21, 2014, SoundSpark Inc. filed a federal trademark application for "TAPTAPE" and *added* TAPTAPE to their webpages in place of the previous SOUNDSPARK and SPARKIT while still continuing to use the stylized design consisting of two "S" letters[24].

47. I believe TAPTAPE is a decoy intended to make me believe, while not true in fact, that the defendants have changed their mark and abandoned SOUNDSPARK and SPARKIT.

48. Contrary to representation, the defendants have evidently not complied with a spoken agreement that they would find another *mark* nor with my demand to cease and desist use of or reference to "Spark" as a *mark* in relation to music and entertainment.

49. In addition, *the addition* of the word mark TAPETAPE to the defendants' webpages and *failure to remove or state a claim of fair use for my mark while continuing to possess and use my mark* in the form of the web domains "soundspark.me" and "sparkit.io" and a design consisting of two stylized "S" letters, they have claimed are their "initials," indicates that they are still willfully utilizing the aforementioned as counterfeit marks to deceive consumers as to the origin of goods and services.

50. My trademark registered on the principal register as United States Trademark Registration No. 4,606,004 on September 16, 2014. This ought to have been, and is, and I shall continue to uphold as, constructive notice of my ownership of the mark pursuant to Chapter 15 U.S.C. §1072. Public notice of my trademark's registration has been given on my website "soundsparkstudios.com"[25].

51. On September 27, 2014, I discovered, realized, and connected the Theory Entertainment LLC trademark applications and SoundSpark Inc. trademark applications with the behaviors, actions, and interactions aforementioned to deduce my conclusion.

52. On October 3, 2014, while writing this complaint, the website at the web domain "threehundred.biz" was changed[26] to a single-view page that

---

[23] EXHIBIT W

[24] EXHIBIT X

[25] EXHIBIT Y

[26] EXHIBIT Z

continues to use the 300 Entertainment word mark and design mark, each, when clicked, directing consumers to social media webpages. The website no longer displays known associates. The website also mimics my own "soundsparkstudios.com" in respect to its minimalism. I believe that the vulgarity displayed in connection with my mark is damaging.

53. There is a count-down timer indicating the day October 21, 2014. I suspect that, on this day, "threehundred.biz" may be discontinued and a new website may launch on the infringing web domain "soundspark.me", of which the MIT students may release control to their 'mentor' and associate Lyor Cohen, in order to complete his possession of the distinguishing features of U.S. Trademark Reg. No. 4,606,004.

54. Also, on October 3, 2014, I noticed that social media webpages, such Facebook and Twitter, for 300 Entertainment, began using the mark "IT'S A NEW DAY"; I believe this is an effort to further dilute SPARK (with DAY). And a design mark consisting of the number "300", with dashes surrounding it, also indicates an effort to dilute SPARK with imagery that is commonly associated with light emanating from a source (SPARK), such as a lightbulb. A banner on the site also displays the abstract colors blue, red, black, yellow, and green; this indicates an intent to dilute my claims to colors gold, red, and blue. They also mock (me?) with a tombstone displaying the 300 Entertainment design mark, the dates "May 22, 2014-October 1, 2014" and the words "He not busy being born is busy dying," which may hint at the defendants intention to assert laches regarding my claims. I, however, do assert, to the contrary, that I have properly owned all my claims and that I have been timely with this action.

## CONCLUSION

55. The defendants collectively seem to have had the following intention in infringing United States Trademark Registration No. 4,606,004: "SOUND" is already disclaimed from exclusive right and concentric ovals may not be distinctive in relation to "SOUND"; "STUDIOS" is already disclaimed from exclusive right; if "SPARK" is diluted, then both "SPARK" and the gold-encircled eight-point star, which may not be distinctive in relation to "SPARK", are removed from distinctiveness in relation to entertainment; and if the impression of the triangular arrangement of the literal elements together "SOUND SPARK STUDIOS" is diluted, then the whole of United States Trademark Registration No. 4,606,004 is diluted and removed from distinctiveness in relation to entertainment.

56. I believe that the defendants, namely Lyor Cohen and Warner Music Group Corp., have conspired to remove me from rightful ownership of my Registered Trademark with the willful intent of having it for their own use— a fraudulent renaming of WMG.

57.     I, Jeremy Southgate, again, so swear that this is true to the best of my own full knowledge and belief.

## COMPLAINTS AS A MATTER OF LAW

58.     I believe that the trademark applications filed by Theory Entertainment LLC for the design mark used by 300 Entertainment, having the serial numbers 86077961, 86077951, 86077989, 86077980, and 86077972, are knowingly counterfeit, have willfully infringed Reg. No. 4,606,004 (i.e. triangle shapes, the number three), and have been presented with false representations of fact to the United States Patent and Trademark Office, and these are causes for action pursuant to Chapter 15 U.S.C. §1114, Chapter 15 U.S.C. §1125, and Chapter 18 U.S.C. §1001.

59.     Furthermore, I believe that the trademark applications filed by Theory Entertainment LLC for the word mark used by 300 Entertainment, having the serial numbers 85913117, 85913136, 85913099, 85913128, and 85913108, constitute willful infringement of Reg. No. 4,606,004 (the number three) and have been presented with false representations of fact, in light of the evidence, to the United States Patent and Trademark Office, and these are causes for action pursuant to Chapter 15 U.S.C. §1125 and Chapter 18 U.S.C. §1001.

60.     I believe that the Delaware entity "SoundSpark Inc.", formed by two graduate students from the Massachusetts Institute of Technology, Ana Villanueva and Christopher Nolte, who have Lyor Cohen's continuing support, financial and otherwise, is knowingly counterfeit, and the entity's connected commercial activities are willful infringement of Reg. No. 4,606,004 (SOUNDSPARK), and these are causes for action pursuant to Chapter 15 U.S.C. §1114 and Chapter 15 U.S.C. §1125.

61.     I believe that the persons mentioned in the previous paragraph have willfully conspired to register my service mark **SPARK IT**[SM] with a false representation, having the serial number 86371371, to the United States Patent and Trademark Office, with respect to ownership and with respect to how the mark will actually be used in connection with services, by way of omission of reference to music, and they have knowingly counterfeited and committed willful infringement of Reg. No. 4,606,004 (SPARK), and these, I believe, are causes for action pursuant to Chapter 15 U.S.C. §1114, Chapter 15 U.S.C. §1125, and Chapter 18 U.S.C. §1001.

62.     I believe that the persons mentioned in the previous two paragraphs have knowingly counterfeited and willfully infringed Reg. No. 4,606,004 (S, SPARK, SOUNDSPARK), in the form of the web domains "soundspark.me" and "sparkit.io" and their design mark, consisting of two

stylized "S" letters, and I believe that these are causes for action pursuant to Chapter 15 U.S.C. §1114 and Chapter 15 U.S.C. §1125.

63.  I believe that Lyor Cohen, Warner Music Group Corp., and associates, in addition to the above mentioned, have willfully diluted Reg. No. 4,606,004 with the use of: a design consisting of the number "300", a design mark consisting of the number "300" inside a circle of dashes, and the colors blue, red, black, yellow, and green, and I believe that these are causes for action pursuant to Chapter 15 U.S.C. §1125.

64.  Finally, I believe that intentions of the defendants, with the summation of these infringing acts, are knowingly and willfully to dilute Reg. No. 4,606,004, as a whole, to the point where it, under my ownership, is no longer distinctive in relation to goods and services in entertainment, and this, I believe, is a very great cause for action pursuant to Chapter 15 U.S.C. §1125.

## PRAYER FOR REMEDY

I respectfully request that the Court order injunctions, the surrender of all infringing articles, maximum statutory damages, and any other remedies that the Court may deem fitting and just to provide.

I respectfully request that the Court consider and apply the principles of equity, common law, and contracts to this action and grant any remedies that can be discerned therefrom as the Court may deem fitting and just to provide.

I respectfully request that the Court grant an extension of time, for me, to investigate further claims and, if good cause is found, timely file further actions against the defendants, or their associates, connected to this action.

I respectfully request the Court's summary judgment on this action.

In God, I trust

On this day,

October 6, 2014

With Great Respect,

*Jeremy Christopher Southgate*
Jeremy Christopher Southgate
10 Kilburn Rd.
West Newton, MA 02465
jeremy@soundsparkstudios.com
617-584-5219