UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEREMY SOUTHGATE,<br><br>    Plaintiff,<br><br>    v.<br><br>SOUNDSPARK, INC., ANA VILLANUEVA, CHRISTOPHER NOLTE, LYOR COHEN, THEORY ENTERTAINMENT LLC, WARNER BROS. ENTERTAINMENT INC., AND WARNER MUSIC GROUP CORP.,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 14-cv-13861-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER

March 31, 2016

BURROUGHS, D.J.

In this action, *pro se* Plaintiff Jeremy Southgate alleges infringement and dilution of his "Sound Spark Studios" and "Spark It" trademarks. From October 2014, when he initiated this action, through March 2015, Southgate filed eight amended complaints, adding nearly 100 defendants. In a May 1, 2015 order [ECF No. 26], the Court granted Southgate leave to proceed *in forma pauperis*, found that the operative complaint would consist of the original complaint [ECF No. 1] and the first amended complaint [ECF No. 6], and directed that summons issue as to the seven defendants named in the original complaint: SoundSpark, Inc., Ana Villanueva, Christopher Nolte, Lyor Cohen, Theory Entertainment LLC, Warner Bros. Entertainment Inc., and Warner Music Group Corp.

Presently before the Court are two motions to dismiss. On July 10, 2015, defendants Lyor Cohen, Theory Entertainment LLC, Warner Bros. Entertainment Inc., and Warner Music Group

Corp. filed a Motion to Dismiss for Failure to State a Claim [ECF No. 66], and on July 17, 2015, the remaining three defendants—Christopher Nolte, SoundSpark, Inc., and Ana Villanueva—did the same. [ECF No. 68]. For the reasons stated herein, both motions are <u>GRANTED</u> and the Complaint is <u>DISMISSED</u> in its entirety.

## I. Factual Background

The following allegations are from Southgate's complaint, which the Court accepts as true for the purpose of resolving the motions to dismiss.

Jeremy Southgate is a musician "who is trying to start a new music and entertainment company on a strong foundation." [ECF No. 6 ("Complt.") ¶ 7]. He is the founder and president of Sound Spark Studios, doing business as a Massachusetts sole proprietorship and as a solely owned Delaware limited liability company. <u>Id.</u> ¶ 5. In April 2014, he registered Sound Spark Studios, LLC with the Delaware Division of Corporations. <u>Id.</u> ¶ 39. As of October 2014, he had devoted three years and invested nearly $47,955 to form and develop Sound Spark Studios. <u>Id.</u> ¶ 13. He has a website for the business at www.soundsparkstudios.com. <u>Id.</u> 32.

In June 2012, Southgate filed an application with the U.S. Patent and Trademark Office ("USPTO") to obtain federal trademark registration for "Sound Spark Studios." <u>Id.</u> ¶ 12. According to the USPTO's online records, the design mark for "Sound Spark Studios" was registered as of September 16, 2014, under Registration No. 4,606,004, with a stated date of first use in commerce of April 20, 2014. <u>See</u> USPTO online records for Registration No. 4,606,004. The mark consists of a gold encircled eight-point star, two red ellipses, and the words "SOUND SPARK STUDIOS" in blue:



See Id. The Complaint contains numerous claims of infringement and dilution of this "Sound Spark Studios" mark. Id. ¶¶ 58-64.

More specifically, Southgate alleges that defendant Lyor Cohen, a well-known music industry executive, visited the Massachusetts Institute of Technology ("MIT") in November 2013. [Complt. ¶ 26]. He claims that defendants Christopher Nolte and Ana Villanueva, who were attending MIT at the time, approached Cohen with "a good faith idea for a 'Kickstarter or Indiegogo for music,'" which would later briefly be known as "SoundSpark." Id. ¶ 27. In January 2014, Nolte registered the web domain name "SoundSpark.me," id. ¶ 28, and in April 2014, Nolte and Villanueva incorporated their new start-up business as SoundSpark, Inc. [ECF No. 69 at 1]. In May 2014, the two won a $10,000 prize from MIT in connection with their SoundSpark venture, and they continued to work on their business the following summer. [Complt. ¶¶ 31, 36].

On August 7, 2014, Villanueva sent Southgate an e-mail asking to discuss his trademark over the telephone, which made Southgate suspicious that she was "trying to set [him] up . . . since phone calls take place 'off the record.'" Id. ¶ 33. After setting certain conditions for their call, Southgate spoke with Villanueva and Nolte on August 11, 2014. Id. ¶ 35. The two told Southgate that they had founded a "music company startup" and expressed an interest in Southgate's "Sound Spark Studios" mark. Id. ¶ 36. Southgate responded that he "intended to reserve all rights for use" of the mark. Id. Southgate claims that he also mentioned his plan for a "derivative SPARK IT." Id. Villanueva and Nolte advised Southgate that they would call back

when they decided whether to find a different name for their company. Id. Later that same day, Nolte called Southgate back and told him that they had decided to find another name for their company. Id. ¶ 38. Southgate sent them a confirming email. Id.

On August 19, 2014, Nolte and Villanueva's venture SoundSpark, Inc. filed a federal standard character trademark application for "SparkIt," and SparkIt replaced all public instances of SoundSpark on webpages controlled by Nolte and Villanueva. ¶ 42. Two days later, on August 21, 2014, SoundSpark, Inc. filed another standard character trademark application, this time for TapTape, and TapTape then replaced all references to SoundSpark and SparkIt on webpages controlled by Nolte and Villanueva. See USPTO online records for Registration No. 4,928,314; Complt. ¶ 46. Southgate "believe[s] TAPTAPE is a decoy intended to make [him] believe, while not true in fact, that the defendants have changed their mark and abandoned SOUNDSPARK and SPARKIT." Id. ¶ 47. He claims that Nolte, Villanueva, and SoundSpark, Inc. have "knowingly counterfeited and willfully infringed" his "Sound Spark Studios" trademark and have "conspired to register [his] service mark SPARKIT." Id. ¶¶ 60-62.

Based on Cohen's apparent "mentorship" of Nolte and Villanueva, id. ¶ 37, Southgate alleges an array of claims against Cohen, his current company Theory Entertainment LLC, his former employer Warner Music Group Corp., and the purportedly related Warner Bros. Entertainment Inc. Id. ¶¶ 58-59; 63-64; 104-125. He claims that various logos, websites, and videos used by these defendants infringe and dilute his "Sound Spark Studios" and "Spark It" marks.

## II. Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded facts in the light

most favorable to the plaintiff and draws all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required to survive a motion to dismiss, "more than labels and conclusions" are required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. The facts alleged must "raise a right to relief above the speculative level." Id. The plaintiff must "nudge[] [the] claims across the line from conceivable to plausible," or the claims will be dismissed. Id. at 570. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010). In this case, the Court construes Southgate's complaint liberally because it was filed *pro se*. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

**III.   Discussion**

    **a.  Trademark Infringement**

The Complaint contains five at times overlapping claims of trademark infringement against six of the defendants—Cohen, Nolte, Villanueva, SoundSpark, Inc., Theory Entertainment LLC, and Warner Music Group Corp.—alleging that they infringed Southgate's "Sound Spark Studios" and/or "Spark It" marks.

The three essential elements of a trademark infringement claim are (1) that claimant uses and owns a mark; (2) that defendant uses an identical or similar mark without permission; and (3) that there is a likelihood that defendant's mark will confuse the public. See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008); 15 U.S.C. § 1125(a).

Any claims that the defendants infringed Southgate's alleged "Spark It" mark fail at step one. The Complaint alleges that Southgate "mentioned [his] plan for a derivative Spark It," but does not allege any actual use of such a mark. Id. ¶ 36. To allege a valid trademark infringement claim, a plaintiff must allege current, not future or past, use of a mark. See Ahmed v. Twitter, Inc., No. CIV.A. 14-10025-RGS, 2014 WL 2003195, at *2 (D. Mass. May 16, 2014) ("Whether or not Ahmed has used the asserted marks in the past, the lack of current use is fatal to his trademark infringement claim."); Swartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 101 (D. Mass. 1999) ("Without a relationship to an existing product, [plaintiff] has no protected trademark in [the asserted mark]."). Because Southgate does not have a registered trademark for "Spark It," and he has not alleged any actual use of such mark, he has not stated a claim of infringement.

The Complaint contains a somewhat more detailed account of Southgate's use of the "Sound Spark Studios" mark. Southgate alleges that he has a registered design mark for "Sound Spark Studios," has incorporated Sound Spark Studios, Inc., maintains a website with the domain name "soundsparkstudios.com," and has "invested a diligently estimated $47,955 and three years of dedication into forming and developing Sound Spark Studios." His registered trademark states that the mark was first used in commerce as of April 20, 2014, in connection with the following goods and services: "Digital music downloadable from the Internet; Downloadable music files; Downloadable music sound recordings; Musical recordings; Musical sound recordings." See USPTO online records for Registration No. 4,606,004. Given the liberal standard that governs motions to dismiss, especially where plaintiff is proceeding *pro se*, the Court finds that Southgate has sufficiently alleged use of the "Sound Spark Studios" mark.

Southgate, however, has not adequately pled the remaining two elements of a trademark infringement claim—use of a similar mark by defendant and likely consumer confusion—and therefore all of his infringement claims are dismissed.

First, with respect to Theory Entertainment, Inc. ("Theory"), even accepting all of Southgate's allegations as true, the Complaint does not allege that Theory used a mark remotely similar to Southgate's "Sound Spark Studios" mark. Theory's triangular mark, reproduced below, bears no resemblance to the "Sound Spark Studios" mark.



Southgate's allegation that the "abstract shape" of Theory's "triangle" is a "colorable imitation of the arrangement of the words 'Sound,' 'Spark,' and 'Studios'" is implausible. Southgate further alleges that eight trademark applications filed by Theory infringe his "Sound Spark Studios" mark. These marks, however, which either contain the triangular figure above or the phrase "300 ENTERTAINMENT" in block letters are not at all similar to his mark. Likewise, Cohen and Warner Music Group Corp.'s alleged use of the "number '300' inside a circle of dashes and the colors blue, red, black, yellow, and green" is also completely different from the "Sound Sparks Studio" mark, as are all the other allegedly similar marks used by Cohen and Warner Music Group Corp. Given that the allegedly similar marks are all in fact dissimilar to Southgate's mark, it is implausible that the defendants' use of these marks caused consumer confusion.

The remaining trademark infringement claims are lodged against Nolte, Villanueva, and the entity they created, SoundSpark, Inc. In January 2014, Nolte registered the domain name

"SoundSpark.me" and in April 2014, Villanueva and Nolte incorporated their new start-up business as SoundSpark, Inc. Soon after being contacted by Southgate, Nolte and Villanueva renamed their funding company TapTape.[1] Because "SoundSpark" is somewhat similar to Southgate's "Sound Spark Studios" mark, the Court evaluates the third element of an infringement claim—the likelihood of consumer confusion.

"[A] defendant's use of a mark must be *confusing* in the relevant statutory sense for a plaintiff to raise a viable infringement claim. Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 52 (1st Cir. 2013) (emphasis in original). The First Circuit Court of Appeals considers eight factors to assess the likelihood of customer confusion: 1) the similarity of the marks, 2) the similarity of the goods, 3) the relationship between the parties' channels of trade, 4) the relationship between the parties' advertising, 5) the classes of prospective purchasers, 6) evidence of actual confusion, 7) the defendant's intent in adopting its mark, and 8) the strength of the plaintiff's mark. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989). "No one factor is necessarily determinative, but each must be considered." Id.

Having considered each of these eight factors, the Court finds that Southgate has not plausibly pled a likelihood of confusion. First, the Complaint does not allege that Nolte and Villanueva ever used the full phrase "Sound Spark Studios" or a design similar to the concentric ovals and star included in Southgate's mark. Nor does Southgate allege that he ever used the mark SoundSpark. Moreover, Southgate has not alleged what services his company provides, what services SoundSpark provides, and how they are similar or compete. Though it is clear from the face of the Complaint that both companies are involved in the music industry, the Complaint does not explain the companies' channels of trade, advertising, or consumer base. In

---

[1] However, the website www.soundspark.me still directs visitors to the TapTape website.

addition, he has not alleged a single instance of confusion. Further, Southgate admits that soon after contacting Nolte and Villanueva, they rebranded their company TapTape, suggesting good faith on the part of the defendants.

Lastly, "Sound Spark Studios" is not a strong mark. "A mark's strength turns on length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting its mark; the number of similar registered marks in the field; and the success of other firms in registering similar marks." Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 395 (D. Mass. 2010). Southgate first applied for the mark in June 28, 2012, and it was registered on September 16, 2014, less than a month before he initiated this action. Southgate allegedly promotes his mark only by maintaining a website with the domain name "soundsparkstudios.com," which displays the mark.

Given the dissimilarity of the marks—the single phrase SoundSpark compared to Sound Spark Studios in blue and capital letters in front of red concentric circles and a gold star—as well as defendants' good faith, plaintiff's weak mark, and the lack of any alleged confusion or product overlap, the Court finds that no reasonable factfinder could find a likelihood of confusion on any set of facts that Plaintiffs could eventually prove. "Although '[l]ikelihood of confusion is a question of fact . . . [if] an inference of likelihood of confusion would clearly be unreasonable, that is, that no reasonable factfinder could find a likelihood of confusion on any set of facts that Plaintiffs could prove, then Defendants will have shown that confusion is unlikely as a matter of law.'" MJ Hoffman & Assocs., LLC v. Commc'n Sales Techniques, LLC, No. CIV.A. 15-10447-LTS, 2015 WL 3767059, at *3 (D. Mass. June 17, 2015) (quoting Qwest Commc'ns Int'l v. Cyber–Quest, Inc., 124 F. Supp. 2d 297, 304 (M.D. Pa. 2000)); see also Moving & Storage, Inc. v. Panayotov, No. CIV.A. 12-12262-GAO, 2014 WL 949830, at *4 (D.

Mass. Mar. 12, 2014) (granting motion to dismiss trademark infringement claim because it was "implausible that any reasonably prudent purchaser exercising ordinary care would be confused by the use of the plaintiffs' marks"). Accordingly, the trademark infringement claims against Villanueva, Nolte, and SoundSpark, Inc. are dismissed.

### b. Trademark Dilution

The Complaint also asserts several claims of dilution under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c). [Complt. ¶¶ 58-64]. "Under the FTDA only *famous* and distinctive marks are eligible for protection against dilution." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 36 (1st Cir. 1998) (emphasis in original). The standard for fame under the FTDA is "rigorous." Id. at 39, 45. A mark is famous if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. §1125(c)(2)(A); see also I.P. Lund Trading ApS, 163 F.27 at 47. ("National renown is an important factor in determining whether a mark qualifies as famous under the FTDA.").

The Complaint does not allege sufficient facts to establish that either "Sound Spark Studios" or "Spark It" is a famous enough mark to be entitled to protection under the FTDA. Southgate does not allege that either mark is recognized by the general consuming public of the United States, let alone a single consumer, and the Complaint does not offer facts that could plausibly support such an inference. Therefore, all of Southgate's dilution claims are dismissed as well. See Boston Granite Exch., Inc. v. Greater Boston Granite, LLC, No. 1:11-CV-11898-JLT, 2012 WL 3776449, at *6 (D. Mass. Aug. 29, 2012) (granting motion to dismiss because Plaintiff did not allege that the mark at issue had achieved national renown or that it was "recognized to the general consuming public of the United States outside the particular trade or

branch of the purchasing public involved in the purchase and sale of stone products") (internal quotations omitted); Lyons v. Gillette, 882 F. Supp. 2d 217, 228 (D. Mass. 2012) ("[A]lthough the 'ACVSMR' mark might be renowned in the veterinary community, the 'ACVSMR' mark is not famous under Section 1125(c). Therefore, the Court concludes as matter of law the 'ACVSMR' mark has not achieved the status of a 'famous' mark and Lyons and Homecoming Farm's federal trademark dilution claim fails.").[2]

## IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss [ECF Nos. 66, 68] are GRANTED and the Complaint is DISMISSED in its entirety. In addition, Southgate's pending motions [ECF Nos. 73, 79] are DENIED as moot.

**SO ORDERED.**

Dated: March 31, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
UNITED STATES DISTRICT COURT

---

[2] The Complaint purports to state claims under 18 U.S.C. § 1001 [Complt. ¶¶ 58-59, 61], but such claims must also be dismissed as a matter of law. Southgate cannot state a claim under 18 U.S.C. § 1001 because that is a criminal statute that does not permit any private right of action. See McCray v. U.S. Postal Serv., No. CIV.A. 10-30171-MAP, 2011 WL 7429503, at *4 (D. Mass. Nov. 15, 2011) report and recommendation adopted, No. 10-CV-30171-MAP, 2012 WL 612509 (D. Mass. Feb. 24, 2012) (dismissing claim made in civil action pursuant to 18 U.S.C. § 1001 because that statute does "not provide a private right of action upon which Plaintiff can rely for relief"); see also Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution.") (citation omitted). To the extent Southgate attempts to raise other claims, for instance for defamation [Complt. ¶¶ 114-117] and monopolization [Complt. ¶¶ 120-125], they are flatly implausible and cannot survive the motions to dismiss.